I understand that everyone is here and accordingly we will dispense the following of the calendar. We will hear the first case with Judge Hall joining us by video. We will then take a recess and then the rest of the calendar will be heard with Judge Walker instead of Judge Hall. So we'll hear the first case. First, Mercury Insurance v. Shawmut Woodworking. Good morning. My name is Cornelius Dannher and I represent First Mercury. Sitting at the table with me is Mr. Baer. We have agreed to split the time. I would like, if the court permits, to hold a minute in rebuttal. I will use five minutes for the principal argument and hold a minute in rebuttal, please. We also have decided to split the issues. I will speak to the liability aspect of coverage. Mr. Baer will speak to the privity aspect of coverage. Perhaps the clearest way to consider the issue of whether or not there was coverage for liability is to focus on the Shepard dynamic because Shepard was clearly the contractor with whom Fast Track, the Mercury insured, contracted. And it should be noted that it is agreed that the underlying complaints, and as the court knows there are four underlying complaints, all speak from the aspect of negligence to the acts and omissions of either Shepard or Shawmut. They do not speak to the acts or omissions of Fast Track. And therein lies the principal aspect and issue of the case because the— There is no issue about Shepard. There is no issue as to privity, Your Honor, but there is an issue as to coverage for liability. And that issue tees up because of the language of the endorsement, which says that such person, that is a potential additional insured, is an additional insured only with respect to liability for bodily injury caused in whole or in part by Fast Track's acts or omissions. And we all know that acts or omissions speaks to liability in and of itself. Fast Track was not a defendant. Its acts or omissions are not an issue in the underlying cases. What is an issue in the underlying cases, as I said moments ago, are the allegations against Shepard or Shawmut as to their acts or omissions. And that's consistent with the policy reasons for having an additional insured endorsement. The additional insured endorsement is not in and of itself a freestanding policy. It's not another CGL coverage for the additional insured. It's coverage that tracks the liabilities that are created by the entity who is the name insured. So if the additional insured finds itself in a situation- But why aren't, why isn't Shepard included as an additional insured? I think Shepard is included as an additional insured. That is not an issue. I don't think that's an issue. That's not an issue. That's not- The question is whether or not there is coverage for the allegations against Shepard in the underlying cases. That's the issue. Based on the complaints, there is no coverage. Correct. And Judge Hayden, Connecticut, in a similar case, found exactly that. That there's no coverage in a situation where the named insured is not in the situation of possible, of a possible finding of liability against the name insured. Then the additional insured coverage does not come into play when the allegations are strictly and solely against the acts and omissions of, in Shepard's case, Shepard. Can you tell us again which portion of the policy you are referring to? Your Honor, I was referring to the additional insured endorsement of the policy. That's J.A. 27. J.A. 27, Part A? Yes. And that portion of the policy speaks- So let me just point out the language. And it's, I can read it, I can barely read it. Additional insured only when, only with respect to liability for bodily injury, property damage, or personal advertising injury caused in whole or in part by your acts or omissions, the acts or omissions of those acting on your behalf in the performance of your ongoing operations for the additional insured. That's what we're focused on. That's correct, Your Honor. Absolutely correct. And so there are two aspects, two main aspects to that. One is the liability, only with respect to the liability imposed on Shepard. And secondly, whether or not Fast Track's acts or omissions are in play with regard to that liability. And in each of the underlying cases- Why would you have that language if that weren't to include in the context of a general contractor and subcontractor, a general contractor subcontracting out work? The subcontractor is doing work on behalf of the contractor. Is that correct? Well, the law in Connecticut, Your Honor, is pretty clear. The Archambault case decided that the general contractor is not responsible for the acts or omissions, if you will, of the subcontractor. That's one case. The Alvarez case, which is another case that we cited, indicated that the principal is not responsible for the independent acts of the agent. But what are these independent acts? Well, because the allegations in the complaint, on the underlying complaint, are only directed at the acts and omissions of Shepard, in one case, and Shawmut in another situation. They do not draw in any allegations of acts or omissions that were performed on behalf of Fast Track. The allegation says that Shawmut and, I guess, Shepard, acting through its agents, servants, or employees. You're correct, Your Honor. I've read that. But the agent is not Fast Track. There's no allegations. They approved the defective design. That's what Shawmut and Shepard did. That's not what Fast Track did. There are no allegations that Fast Track, as an agent of either Shepard or Shawmut, there's no allegations. Fast Track is doing the work for Shawmut. Yes. It was a subcontractor, Your Honor. Right. And so, in essence, they're working on it together. Well, if we impose the names into the language of the additional insured endorsement, we would see that such person, that is to say, Shawmut or Shepard. I'm going to just stay with one of them. Make it easier. So, Shepard is an additional insured only with respect to bodily injury caused in whole and in part by Fast Track's acts or omissions. Acts or omissions, by its very definition, speaks to liability, and there are no allegations in the underlying complaints that speak to Fast Track's acts or omissions. You're saying Shepard and Shawmut are liable as additional insureds only for Fast Track's acts or omissions, and the complaints don't allege negligent conduct on Fast Track's part? Absolutely correct, Your Honor. Okay. We'll hear from your colleague. Thank you, Your Honor. Good morning, Your Honors. I have three points I'd like to cover briefly this morning. First, under Connecticut law, the reading that the appellees urge on the court is not consistent with the natural reading of the language and one that gives effect to each and every term in the policy provision. Second, it's inconsistent with the established law in the only two states whose appellate courts have actually read and construed and addressed this specific policy language. And third, as a matter of policy, it doesn't make sense to try to shoehorn Shawmut into coverage under this policy in the circumstances of this case. As to the first point, Your Honor, the natural layperson's reading of this language, which is what Connecticut law requires, when you look at the language, it says, you and such organization have agreed, and you and such organization here refers to you, the insured Fast Track, and such organization, the one that's seeking additional insured coverage, Shawmut, have agreed. The Illinois appellate courts have looked at that alone and said that requires an agreement between the two parties. It doesn't say you and any organization have agreed to add this entity. It's you and such organization. The language goes on to say the agreement must be in writing and it must be in a contract or agreement. There isn't a way to read that language reasonably to give effect to all of its terms, each and every term, each and every word in that provision, without rendering some of them duplicative. And under Connecticut law, that's not a reasonable reading of the provision, and it can't create an ambiguity. Doesn't Fast Track's agreements incorporate the other agreements? Yes and no, Your Honor. Fast Track's agreement with Shepard. That's either a yes or a no. Well, let me explain. It is not, even incorporating terms of the Shawmut-Shepard contract doesn't create an agreement between Shawmut and Fast Track to name Shawmut as an additional insured. That is an argument that has been rejected by the- In answer to Justice Chin's question, it's a yes. It incorporates whether there are, what the consequence of that is, is a separate question. It incorporates the terms. What it actually says, Your Honor, is that Fast Track agrees to complete the work in accordance with the terms of the subcontract and the contract. My point is that does not constitute a contract or agreement between Shawmut and Fast Track because Shawmut is agreed to nothing. So it can't be a contract or agreement because there is no agreement. Shawmut's agreeing to nothing. It is just a one-sided, you must follow these terms. That alone is not adequate to satisfy the requirement in the additional insured provision that there be an agreement in writing in a contract or agreement. You're suggesting there had to be a single direct agreement. That's correct, Your Honor. As the courts of New York and Illinois- Would you not agree that there's at least some ambiguity as to whether you needed a separate agreement? I would not because the only way of reading it as not requiring a one agreement, a single agreement between the party, the insured and the party seeking insured coverage, is to disregard some language or make some language redundant in the term and not give it its natural reading under Connecticut law and the law of most states. That is not a reasonable interpretation. Only an interpretation that gives effect to every word is reasonable. It's very easy to make it clearer. That is to say that it's got to be a direct agreement or in a single agreement, and that language doesn't appear here. Your Honor, the test is not whether you could make this provision clearer. You could make it clearer either way. The question is whether one of these interpretations doesn't give effect to all the terms and is not the natural reading. Tell me exactly how this does not give effect to all the terms. Because, Your Honor, if it had said only in writing, then in writing with multiple parties might make sense, but it says in writing, in a contract or agreement. If it satisfies— Doesn't that—I mean, just if you look at it very technically, doesn't this satisfy precisely that language? No, I don't think it does, Your Honor, because it would have to satisfy both the requirement that it be in writing and in a contract or agreement, and you also have to satisfy the language— What part is missing there? Because, Your Honor, if there's two agreements, if there are two agreements and not one, then it doesn't satisfy the requirement that there be a contract or agreement. And secondly, it doesn't satisfy the provision that says that you and such organization have agreed in a writing or a contract. You and such organization, as the Illinois courts have made clear, refers to the insured and the party seeking coverage. So the idea that you could satisfy this language, which clearly envisions some sort of contractual arrangement between the two parties, is satisfied when those two parties have no agreement at all, and you look to multiple agreements to try to satisfy it, is not consistent with the principles of interpretation under Connecticut law. I guess the last point I would add is, you know, Shawmut had multiple ways to ensure that it got this coverage. There are other kinds of additional insurance provisions that don't require any written contract or agreement, and, in fact, that is specifically what Shawmut required of Shepard. If you look at the Joint Appendix, page 107, the policy— a specific named additional insured provision, CG2010, and that requires Shawmut to be listed in a separate schedule. So it doesn't require any agreement. That's not what they required here, and it's not the policy that Fast Track procured. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Ashley Noel, and I represent the defendant, Shawmut Woodworking and Supply, doing business at Shawmut Design and Construction. I'll be reserving six minutes for myself this morning. We're reserving six minutes for counsel for the co-defendant, Jack Stagelfest. Your Honors, the insurance policy at issue, or specifically the additional insured endorsement at issue, required that the named insured, Fast Track Steel, and the entity seeking additional insured coverage, my client, Shawmut, have agreed in writing in a contractor agreement that Shawmut would be added as an additional insured on Fast Track's policy. And that's exactly what occurred here. Both Fast Track and Shawmut have each agreed in writing in a contractor agreement that Shawmut would be added as an additional insured on Fast Track's policy. The policy at issue did not require a direct single contract between Fast Track and Shawmut in order for Shawmut to qualify as an additional insured. While the courts of Illinois and New York have found that requirement, other courts have found, as we've noted in our brief, the courts in Procon and Millis, which are the southern district of Texas and the district of Maine, have found that the plain language of the policy does not require a direct agreement, but rather that that would require you to read certain words into the policy, such as with you, after have agreed, or direct, or between. Are you telling us that there's nothing in Connecticut law that has grappled with this specific question? Not to my knowledge, Your Honor. And I don't believe either party has located any Connecticut law dealing with this specific endorsement at issue. Is there a reason why we shouldn't ask the Connecticut Supreme Court to deal with this instead of having a federal court deal with an issue of Connecticut insurance law? Your Honor, I think the language of the policy is clear here, and it needs to be construed in favor of the insured rather than in favor of the insurance company. The plain language, I don't think, requires a certification in the Connecticut Supreme Court because the language is clear. To require a direct contract… Even if the language is not clear, you win? Yes, Your Honor. If the language is not clear, that would create an ambiguity in the policy, and in that case, the policy would have to be construed in favor of the insured and against the insurer under Connecticut law. Is there some other indicia on the record of intent here? I mean, I see a gray brief that says that they intended to have Sharmut, parties intended to have Sharmut named as an additional insurer. But is there some indication beyond the clear language or the language of the policy? That the parties intended to have? Yes, Your Honor. What is that? It's spelled out in each of the… There's two construction contracts at issue here. There's a contract between Shepard and Sharmut, which is Sharmut was the general contractor and Shepard was its direct subcontractor. That contract required Shepard to obtain additional insured coverage for Sharmut and to require for Sharmut to have each subcontractor it hired to also be bound by that agreement to the same extent that Shepard was. So it basically required that down the line, each subcontractor hired by Shepard would also have to name Sharmut as an additional insured. And then in turn, in the contract between Shepard and FastTrack, FastTrack was required to obtain a certificate of insurance naming Sharmut as an additional insured. So aside from the plain language of the policy, there is an intent there on behalf of all parties that Sharmut would be named as an additional insured. They still had to comply with the requirements of the FastTrack policy, right? Yes, Your Honor. The question is whether there was compliance without a separate direct agreement. Yes, Your Honor. But there is also that one agreement. As Your Honor has pointed out before, the subcontract between FastTrack and Shepard expressly incorporates the contract between Sharmut and Shepard, in essence making it a part of that contract altogether. So there is a single agreement. Is that something that was sent to the insurer, insurers? The construction agreements? That is the fact that it was all incorporated in one agreement. That I do not know, Your Honor. I would also like to touch briefly on the second issue, dealing with liability caused in whole or in part by FastTrack's acts or omissions. Before you jump to your counsel, while we're not going to avoid you to question the certification of the defendants in court, briefly, what's happening in the underlying set of litigations by the insured individuals or the estate against the various state authorities? The underlying lawsuits are still pending. Counsel, you can just look at the camera. Oh, okay. Yes, Sharmut is currently being defended by Liberty Mutual, which is the liability carrier for Shepard. Is there a cap on the amount? That I do not know, Your Honor. In speaking to the second issue, thank you, the plain language in this part of the policy is even clearer. It requires, it provides liability for bodily injury caused in whole or in part by FastTrack's acts or omissions. The language of in whole or in part makes clear that this can't be limited to vicarious liability because vicarious liability is an all or nothing proposition. The policy provides coverage for two situations where either solely the named insured's actions caused the bodily injury. What your adversary, I think, is saying is that the complaints taken in total are defective and that they don't actually allege specific acts or omissions. I think that that's right. Yes, Your Honor. They don't. Why don't you show us where in the complaints he's wrong? Your Honor, the name, the underlying complaints don't name FastTrack for one simple reason, which is that there's workers' compensation immunity in Connecticut, so the underlying plaintiffs could not have sued their employer. They're barred from doing so by the workers' compensation statute. So aren't we to look at the four corners of the complaint or complaints? Yes, Your Honor. If there are no allegations about acts or omissions, then how do you prevail? The acts or omissions of FastTracks can be inferred from the face of the complaint, which is allowed under Connecticut law. The complaints deemed to be extrude can work broadly in favor of finding a duty to defend. Two of the complaints, the Adrian and Enfield complaints— So was the workers' compensation scheme under Connecticut law something that prevented you from making an allegation, at least for purposes of triggering the duty to defend? It wouldn't prevent you from raising FastTrack somewhere in the complaints, but— Why didn't you do that? It could have—FastTrack is named in part in two of the complaints. It's mentioned that FastTrack was the employer of two of the underlying plaintiffs and that they were injured in the course of their employment while working on the steel structure. So the inference is there that FastTrack's acts or omissions came into play somehow. What you're really saying is that there's no fair reading in that complaint that would lead a reader reasonably to conclude that FastTrack was not liable and that it didn't involve its acts or omissions. Is that correct? Correct, Your Honor. Thank you very much. Thank you. Thank you. Good morning. The question posed that counsel has referred to as a liability question is whether the particular language of the additional insured endorsement found in the first Mercury policy necessarily limits the scope of additional insured protection only to vicarious liability for the wrongs of FastTrack. The question is not whether first Mercury has come up with a plausible argument for that limitation. The question is whether there's any plausible reading of the language that is not limited to vicarious liability. Looking at this language, you do not find any explicit limitation to vicarious liability as you do find in many other additional insured endorsements. Well, I agree with you that the language in whole or in part seems inconsistent with the idea or theory of vicarious liability. I would agree, Your Honor. Moreover, counsel has argued that there is an implicit limitation in additional insured endorsements to vicarious liability. I have provided the court in my brief with numerous citations to Connecticut cases which hold that additional insured endorsements can and do cover the separate negligence of the additional insured. What about the situation where there is no fault on the part of FastTrack? Would there be coverage, assuming there was no fault on the part of FastTrack? Your Honor, I think the relevant question under the language is whether any acts or omissions of FastTrack were a cause of the underlying loss that gave rise to this lawsuit. Not necessarily fault, but whether the acts or omissions of FastTrack contributed to that accident that leads to the claim. That's the way the district court in this case interpreted the language. And, Your Honor, looking at... So, if we use that language, if FastTrack's actions did not contribute to the injuries, is there coverage? I believe there would be no additional insured coverage if FastTrack's acts or omissions were not a cause of the underlying loss, yes. And do the pleadings suggest that FastTrack's actions were at least a cause? Let me respond to that in two ways, Your Honor. First, as my sister counsel for Shawmut has indicated, a reading of the allegations permits that interpretation. That is, there's nothing in the complaint that negates that reading. And if you read the complaint and there's a fair interpretation that would implicate coverage, then First Mercury should be defended. But beyond that, and very importantly, Your Honor, it doesn't have to be alleged in the complaint. And I've put forward for you the cases under Connecticut law, particularly the Hartford Casualty case and its progeny, as recognized by this court previously, that the Four Corners Rule does not limit the duty to defend where there are facts known to an insurer that are consistent with the complaint that raise the possibility of coverage. And in this situation, personally- Your Honor, there's nothing in the record that goes to the underwriting question of whether before any of the work was done, First Mercury knew- what First Mercury knew about the contractual relations between the parties. Is there anything in- I'm sorry? Has that been interposed as a defense against, you know, who you are and the other insurers? No, Your Honor. In fact, in the motion for summary judgment that was filed by First Mercury, they attached the contracts because you have to look outside of the pleadings in order to apply the additional insurer endorsement under its plain language. But even beyond that, under the Hartford Casualty case in Connecticut, where there are facts known to an insurer that are consistent with the allegations that would raise the possibility of coverage, an insurer must- can't ignore those facts. I mean, in this situation, First Mercury is asking the Court to not look at the man behind the curtain. But that's not Connecticut law, and this Court has previously recognized it's not Connecticut law. First Mercury has not disputed at all throughout this proceeding that, as a matter of fact, Fast Track's extra omissions contributed to this underlying loss. And I provided the factual documentation for you with our briefs. Yes, they forfeited that argument. That it didn't contribute. As a matter of fact, yes, it never contested that issue. So the question is, if- What is there in the record, whether it's in the complaint or otherwise, to show some fault on the part of Fast Track? Your Honor, there are numerous things that are in the record, and I provided citation for them in my brief. But critical among them is the OSHA report, which was in the hands of First Mercury for years, and which laid out the circumstances of how this incident occurred. I would argue a fair reading of the OSHA report indicates that this entire thing was due to the accidental omissions of Fast Track. It was their employees doing the work. It was their employees actively engaged in the activity that led to the dislodging of these pieces, which caused people to fall and which fell on them and caused the death and injuries. All of that work was being done by Fast Track. As a factual matter, that's not in dispute. What First Mercury is arguing is that you can't look at that because it's not explicitly in the complaint. I would argue, number one, it is sufficiently implicit. But more importantly, you can look at it, even if it isn't in the complaint, under the Hartford Casualty case in Connecticut. Thank you. Based on everything that has been submitted, I'd ask the Court to look at the briefs and affirm the district court's judgment. Thank you very much. Thank you. We'll hear the rebuttal. Thank you, Your Honor. Your Honor, first of all, with regard to the Hartford Casualty case, I'd like the Court to keep in mind that there is a finding in that court that there must be at least one allegation in the complaint that falls even within the possibility of coverage in order to find it. Do you disagree that there is, for example, an OSHA report that suggests at least a large part of the fault was Fast Track's? I don't disagree that there's an OSHA report, Your Honor. I would submit that no court, either judge or jury, is going to deliberate with regard to whether or not that poses any liability on Fast Track or poses any liability on either Shawmut or Shepard. That is not going to be part of the encompass within the allegations that are framed against Shawmut or Shepard in the existing complaints. Your argument is that we can only look at the complaint. No, that's not true, Your Honor. I don't mean to be that narrow, but what I say is that you must first look at the allegations, and then if the allegations take you beyond to some factual inquiry, you can then look at the factual underpinnings. So Ms. Novell made the point that a general fair reading of the complaint, you can infer from that that there was some act, some omission by Fast Track that led to the unfortunate events here. I respectfully disagree, and I encourage the court, which probably your order has, but I respectfully disagree when you read the allegations in the underlying complaints, you will read that they are directly framed at Shepard and Shawmut. I'd also like to call the court's attention to this workers' comp issue. As this circuit has already said in IBM versus Liberty at 303 Fed 3rd 419, tactical decisions cannot be brought into interpretations of allegations. We have your point. Thank you. We hear from your colleague. Two quick points, Your Honor. One, the question of intent was raised. Yes, this is in your gray brief. Yes. So the question is not what the parties intended to produce a policy that provided additional insured coverage. The question is whether it did. No, I understand that. It's undisputed that the parties intended to have Shawmut named as an additional insurer. That's correct, but they didn't produce a policy that did that, and Shawmut had numerous options to deal with that. They didn't do that. They could have sent a one-line agreement that said we agreed that Shawmut should be named. They didn't do that. They could have insisted on the type of additional insured policy they required of Shepard. But your argument, I mean, look, half of your argument would be it could have been that there was no intent, and here you're giving up that argument. You're saying if you rely on the technical language of the policy, then you prevail. I think the answer is, Your Honor, you must look at what the policy was they produced, not the policy they intended to produce. They just didn't produce a policy that effectuated that intent. The other point I'd like to make briefly is that the only two states that have addressed this language have their appellate courts have uniformly concluded that a direct contract is required, rejected the incorporation argument. The cases relied upon by the appellees here at PROCON and- We're out of time. Thank you. We have your point. Thank you. We will reserve decision. We'll take a short recess. Thank you. Court is standing for recess. Thank you.